**IN THE UNITED STATES DISTRICT COURT**
**OF THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

MARCUS STARKS;
APRIL STARKS                                                    **PLAINTIFFS**

**VERSUS**                              **CIVIL ACTION NO. 3:15-CV-00094-MPM-SAA**

DEPUTY AUSTIN KEYS, BADGE #27,
in his individual capacity                                    **DEFENDANT**

<u>**MEMORANDUM OF AUTHORITIES IN SUPPORT OF**</u>
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

**COMES NOW,** Defendant Deputy Keys, by counsel, and respectfully submits this

Memorandum of Authorities in Support of Motion for Summary Judgment pursuant to *Fed. R. Civ.*

*Proc. 56* for the following reasons, to-wit:

**I.      PREMISE**

This is a post-<u>Rodiguez</u> claim[1] wherein Plaintiff Marvin Starks (driver) and his wife April

Starks (passenger) allege that they suffered a violation of constitutional rights under the Fourth and

Fourteenth Amendments due to a delayed traffic stop.  Defendant Deputy Keys is entitled to

qualified immunity as the length of time of the traffic stop was objectively reasonable.

**II.     BACKGROUND**

The Tunica County Radio Station Log[2] is illustrative of the sequence of events, along with

the relevant time frame to assist this Court in determining the reasonableness of the length of time

---

[1]<u>Rodriguez v. United States</u>, 135 S. Ct. 1609 (2015) "Absent reasonable suspicion, police extension of a traffic stop in order to conduct a dog sniff violates the Constitution's shield against unreasonable seizures."

[2]Exhibit C - TCSO Radio Station Log.

1

of the stop.  The Radio Station Log reflects as follows:

    1.    At 2020, SO #27 (Keys) executed a 1057 (vehicle stop) on a tag that reads DEC 471 MS (Mississippi tag out of Desoto County) on a vehicle registered to Aaron Worhorst or Sandra Irby - it was a 1990 Ford, black in color.

    2.    At 2023, Units SO 35 (Tunica County Deputy White) and SO 55 (Tunica County Deputy Saffold) arrived as backup for Deputy Keys.

    3.    At 2027, SO 35 (White) calls for SO 10 (Tunica County Shift Captain Felix) for assistance.

    4.    At 2034, SO 10 (Captain Felix) radios that he has finished his last assignment and is en route to the scene of the traffic stop at Fitzgerald Blvd.

    5.    At 2042, SO 10 (Captain Felix) advises he arrives at the scene.

    6.    At 2049, radio logs indicate that SO 55 (Saffold) has run the driver's license of Marvin Starks and other occupants in the vehicle, and all come back negative for outstanding warrants.

    7.    At 2055, Keys, Saffold, and White radio that the traffic stop is completed.

Thus, pursuant to the radio logs, the traffic stop lasted approximately 35 minutes.  However, from 2027 to 2042, officers were waiting on Captain Felix to arrive from Tunica.  The request to speak to a supervisor was made per Marvin Starks.[3]  This request for a supervisor was also memorialized in Defendant Keys's Incident Report.[4]

---

[3]Exhibit E - Affidavit of Deputy Markendrick Keys; Exhibit F - Affidavit of Deputy Anfrenee Saffold; Exhibit G - Affidavit of Deputy Angela White; Exhibit H - Affidavit of Captain Monolito Felix.

[4]Exhibit B - TCSO Offense/Incident Report.

-2-

Deputy Keys is a certified law enforcement officer.[5] On December 10, 2014, Marcus Starks pled guilty to the seatbelt violation and was fined $44.00.[6]

## III.   SUMMARY JUDGMENT STANDARD

### A. Revised standard post Scott v. Harris

Defendants invoke the controlling standard for consideration of dismissal/summary judgment under Fed Rule Civ Proc 12(b)(6) and Fed Rule Civ Proc 56; (*See* Also: Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Impossible Elec. Tech. v. Wackenhut Protection Systems, 669 F.2d 1026, 1031 (5th Cir. 1982); Environmental Defense Fund v. Marsh, 651 F.2d 983, 991 (5th Cir. 1981); and, Southern Distributing Co. v. Southdown, Inc., 574 F.2d 824, 826 (5th Cir. 1978)).

An interesting thing happens to the standard summary judgment analysis when there is video or documentary evidence present. Although appellate courts still review evidence in the light most favorable to the nonmoving party, the United States Supreme Court has modified the standard analysis to assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene. Scott v. Harris, 550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). In Scott, the plaintiff, who was the fleeing suspect, contended that the police were culpable by employing a maneuver to stop his speeding automobile, knowing that it would cause serious injury to him. On the other hand, the suspect in Scott was clearly depicted on video

_____

[5]Exhibit D - Mississippi Law Enforcement Officer Standards and Training Certificate of Markendrick Keys.

[6]Exhibit A - Uniform Traffic Ticket Seatbelt Violation; Exhibit I - Tunica County Justice Court Seatbelt Violation Disposition.

endangering innocent citizens and other officers with his reckless driving. In short, this Court need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider "the facts in the light depicted by the videotape." Id. at 381.[7]

### B. Impact of Radio Dispatch Log

Here, although there is no video of the incident, there is a radio log of events which outlines the time sequence of events in this case as well as actions of each caller. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 247–248 (1986). When opposing parties tell two different stories, *one of which is blatantly contradicted by the record*, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. Scott v. Harris, 550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

## IV. ARGUMENT AND AUTHORITIES

Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U. S. 511, 526 (1985). Qualified immunity requires resolution of a "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show

---

[7]

See Also Foster v. Carroll County, 502 Fed. Appx. 356, 358 (5th Cir. Miss. 2012)(The prisoner argued that his excessive force claim should have proceeded to a jury because he did not have a pellet gun in his hands when the deputy shot him in the leg. A videotape of the situation was partially obstructed and did not show his hands in the moments immediately preceding and following the shooting. However, the audio and visual portions of the videotape of the incident demonstrated that the prisoner's version of the events was a visible fiction. Viewing the videotape of the deputy's actions from the perspective of a reasonable officer, the district court correctly concluded that the deputy's actions were objectively reasonable under the circumstances.).

the officer's conduct violated a constitutional right?" <u>Saucier v. Katz</u>, 533 U. S. 194, 201. Pp. 3–4. If, and only if, the court finds a violation of a constitutional right, "the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case." <u>Id.</u>

**A.    Deputy Keys did not violate Plaintiff's right to be free from an unreasonable seizure.**

In <u>United States v. Brigham</u>, 382 F.3d 500, 508 (5th Cir., 2004)(en banc), Bingham argued that a highway patrolman exceeded the scope of the valid traffic stop and prolonged the occupants' detention excessively and unconstitutionally when, after determining that neither Brigham nor the other occupants of the rental car were its authorized drivers, The highway patrolman interrogated them about their travel plans and then instituted computerized vehicle and I.D. checks of all occupants.  The Fifth Circuit found that the trooper's actions were reasonable.  The Fifth Circuit's analysis in <u>Bringham</u> and its progeny is particularly applicable here.

The stopping of a vehicle and detention of its occupants constitutes a "seizure" under the Fourth Amendment. The Fifth Circuit, following the Supreme Court, has treated routine traffic stops, whether justified by probable cause or a reasonable suspicion of a violation, as <u>Terry</u> stops.  See <u>Berkemer v. McCarty</u>, 468 U.S. 420, 439, 104 S. Ct. 3138, 3150, 82 L. Ed. 2d 317 (1984); <u>Pennsylvania v. Mimms</u>, 434 U.S. 106, 109, 98 S. Ct. 330, 332, 54 L. Ed. 2d 331 (1977) (per curiam); see e.g., <u>United States v. Dortch</u>, 199 F.3d 193, 198 (5th Cir. 1999). District courts must consider the facts and circumstances of each case, giving due regard to the experience and training of the law enforcement officers, to determine whether the actions taken by the officers, including the length of the detention, were reasonable under the circumstances. <u>United States v. Brigham</u>, 382 F.3d 500, 507 (5th Cir., 2004)(en banc).

-5-

Defendant Keys must show that his actions after he legitimately stopped the vehicle containing Starks was reasonably related to the circumstances that justified the stop, or related to dispelling any reasonable suspicion developed during the stop. However, it is of note that "Detention, not questioning, is the evil at which <u>Terry</u>'s second prong is aimed." <u>United States v. Brigham</u>, 382 F.3d 500, 507 (5th Cir., 2004)(en banc). Mere police questioning, without some non-consensual restraint on one's liberty, is not a "seizure" or detention. <u>Florida v. Bostick</u>, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386, 115 L. Ed. 2d 389 (1991).

The sequence of events in this traffic stop become relevant to determine the reasonableness of the stop, and the question of whether Deputy Keys is entitled to qualified immunity.

**B.     Starks did not own the vehicle, and the plate did not match.**

The Fifth Circuit has consistently approved a police officer's questioning a driver's travel plans where the driver was not the authorized vehicle lessee or otherwise appeared to lack driving authority. <u>United States v. Jones</u>, 234 F.3d 234, 237-41 (5th Cir. 2000); <u>Dortch</u>, 199 F.3d at 195-200; see also <u>Roberson</u>, 6 F.3d at 1090-93; <u>Gonzales</u>, 328 F.3d at 756-59. Here, as the dispatch log reflects, the plates on the vehicle (DEC 471 MS) were supposed to be registered to "Aaron Warhurst" or "Sandra Irby" on a *1990 Ford, black in color*.[8] Instead, Officer Keys's report reflects that the vehicle in which Plaintff's were driving was a *Chrysler 300, white in color*.[9] Neither Aaron Warhurst nor Sandra Irby were in the vehicle. Thus, Deputy Keys, at this point, had the right to continue to detain the suspects and demand their licenses.

**C.     It was reasonable for Defendant Keys to reasonably detain and question the**

_____

[8]Exhibit C - TCSO Radio Station Log at 20:20.

[9]Exhibit B - TCSO Offense/Incident Report.

**other occupants.**

In addition to questioning the driver, the Fourth Amendment permits a police officer to undertake similar questioning of the vehicle's *occupants* to verify the information provided by the driver. United States v. Brigham, 382 F.3d 500, 508 (5th Cir., 2004)(en banc). Therefore, within the legitimate scope of the stop were the registration and license checks that Keys then initiated on the other occupants, particularly after Keys ascertained that (1) Starks was not the owner or lessee of the vehicle, (2) the owner or lessee was not physically present in the vehicle, (3) the color and make of the car did not match the plates and (4) other occupants actively refused to comply with a request to produce identification.

**D.     The demand of Marvin Starks "to see a supervisor" created a consensually prolonged encounter.**

United States v. Brigham makes clear that a consensually prolonged encounter does not amount to a detention. 382 F.3d 500, 508 (5th Cir., 2004)(en banc). Affidavits of all officers at the scene reflect that Plaintiff Marvin Starks requested a supervisor appear at the scene.[10] This prolonged the traffic stop from being a 7 minute encounter to a 35 minute encounter.

Further, it was recently reiterated in United States v. Pena-Gonzalez, 2015 U.S. App. LEXIS 12404 (5th Cir. Tex. July 16, 2015) that ("An officer . . . may conduct certain unrelated checks during an otherwise lawful traffic stop. . . . [but] may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual."). See Rodriguez v. United States, 135 S. Ct. 1609, 1614, 191 L. Ed. 2d 492 (2015). In short, Marvin

---

[10]Exhibit E - Affidavit of Deputy Markendrick Keys; Exhibit F - Affidavit of Deputy Anfrenee Saffold; Exhibit G - Affidavit of Deputy Angela White; Exhibit H - Affidavit of Captain Monolito Felix.

Starks and April Starks cannot claim damages when Marvin Starks was the one who (1) demanded to see a supervisor (2) in a vehicle that he did not own (3) which did not contain the owners of the vehicle (4) which did not match the plates to the description.

## V.      CONCLUSION

Marvin Starks was properly detained for not wearing a seat belt.  He pled guilty to that.  The plates on the vehicle did not match its description.  The owner/lessee of the vehicle was not present. The occupants of the vehicle refused to produce their identifications upon demand.  Plaintiff Marvin Starks demanded a supervisor make the scene.  Once the occupants complied with the supervisor, the traffic stop was completed.  While the traffic stop did take approximately 35 minutes, Deputy Keys acted reasonably under the circumstances and should be entitled to qualified immunity.

**RESPECTFULLY SUBMITTED** this 25th day of August, 2015.

**DEPUTY KEYS, BADGE #27,
in his individual capacity**

By: */s/ Michael S. Carr*
    Daniel J. Griffith, MSB #8366
    Michael S. Carr, MSB #102138
    Attorneys for Defendant

Of Counsel:

**GRIFFITH & CARR**
123 South Court Street
P. O. Drawer 1680
Cleveland, MS 38732
Telephone:  662-843-6100
Facsimile:  662-843-8153
Email: mcarr@griffithcarr.com

David L. Tisdell
Tisdell Law Office, PLLC
227 Main Street
P.O. Box 2459
Tunica, MS 38676-2459
Phone: (662) 357-9595
Fax: (662) 357-9599

## CERTIFICATE OF SERVICE

I, Michael S. Carr, counsel for Defendant, Deputy Keys, in the above case, do hereby certify that I have this day caused a true and correct copy of the above and foregoing *Memorandum of Authorities in Support of Motion for Summary Judgment* to be delivered by ECF filing system to:

> Ronald W. Lewis
> RONALD W. LEWIS, ATTORNEY
> 404 Galleria Lane, Ste. 5
> Oxford, MS 38655
> Phone: (662) 234-0766
> Email: ron@ronlewislaw.com
> **Attorney for Plaintiff**s

**FILED** this 25th day of August, 2015.

> /s/ Michael S. Carr
> Michael S. Carr