IN THE UNITED STATES DISTRICT COURT
OF THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

MARCUS STARKS;
APRIL STARKS                                                                   PLAINTIFFS

VERSUS                                    CIVIL ACTION NO. 3:15-CV-00094-MPM-SAA

DEPUTY AUSTIN KEYS, BADGE #27,
in his individual capacity                                                  DEFENDANT

**REBUTTAL TO PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DOC. 17]**

**COMES NOW,** Defendant Keys, and files this his Rebuttal in Support of Motion for Summary Judgment for the following reasons, to-wit:

1.        **Plaintiffs' claims fail due to Marcus Starks prolonging the stop.**

Plaintiff Marcus Starks admits in his Affidavit[1] that he made a request to speak with Keys' supervisor because he did not believe Keys had a right to run warrant checks on the identifications of other passengers. As stated in Defendant's initial Memorandum brief, Plaintiffs cannot now come forward and argue that the time of the stop was unreasonable when it was due to a delay caused by Marcus Starks's disagreement with a law enforcement officer's command. This position is also supported by the Affidavit of April Starks who affirmed that Plaintiff Marcus Starks requested to talk to Keys' supervisor, Monolito Felix[2]. Tunica County deputies, in an effort to satisfy Mr. Starks, contacted Captain Felix and requested him to come to the scene. This added more than 20 minutes

---

[1] See Plaintiffs' Response [Doc. 18] at page 3: "Marcus objected, saying he did not believe the officer had the right to do that (run the driver's license of Marcus). Keys insisted he did have that right. Marcus said he wanted to ask Keys' shift supervisor if that was true."; See also Exhibit 3 to Plaintiffs' MSJ Response [Doc. 19] at paragraphs 7-10;

[2] See Exhibit 4 to Plaintiffs' MSJ Response, at paragraph 14.

1

to the traffic stop. In short, Tunica County did not detain Marcus Starks so a supervisor could come and deal with the situation. Marcus Starks *asked* for the supervisor. As Rodriguez makes clear, absent reasonable suspicion, *police extension* of a traffic stop in order to conduct a dog sniff (and presumably other reasons) violates the Constitution's shield against unreasonable seizures. Here, there was no *police extension* of the traffic stop. The extension was caused by the occupants in the vehicle who were not cooperating with the officer and requested to see a supervisor. Rodriguez v. United States, 135 S. Ct. 1609 (U.S. 2015). As a result, the claim of passenger Plaintiff April Starks also fails because she was detained not by the officer, but by Marcus Starks's request to see a supervisor.

      2.      **Officers had reasonable suspicion to continue to detain the vehicle.**

In addition to, and unlike the facts of Rodriguez, Officer Keys in this instance *had reasonable suspicion* to continue to detain the suspects, even if the ticket was given to Marcus Starks *prior* to the request by Marcus Starks to see a supervisor (i.e. this is assuming arguendo that the traffic stop is viewed as "completed"). The plates on the car did not match, and the occupants in the car were not its registered owners. Officers have authority to address the traffic violation that warranted the stop and *attend to related safety concerns*. Illinois v. Caballes, 543 U. S. 405, 407, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005). The fact that Marcus Starks was getting angry and disrespectful is a related safety concern.[3] The fact the Mr. Starks also failed to put the car in park and it rolled forward also raised an alert with the officers. Officer Keys had to yell to Starks to put the car in park, and approached slowly.[4]

---

[3]See [Doc. 12-2], Exhibit B to MSJ, TCSO Offense/Incident Report, at page 1.

[4]See [Doc. 12-2], Exhibit B to MSJ, TCSO Offense/Incident Report, at page 1.

Granted, Plaintiffs take great pains to point out in their Response brief that it was "patently obvious" that the dispatch about the inconsistent car tag was not relied upon to justify a demand to run the driver's licenses of the passengers.[5] However, this is speculation on the part of the Plaintiffs. While it is true there is no mention of the incorrect plates on the vehicle in the Incident Report, the Radio Log is clear that the plates were incorrect, and the owners of said plates were not occupying the vehicle. Officers do not have to articulate to the suspect <u>at the time of the traffic stop</u> a definitive list of actions which create "reasonable suspicion."

**RESPECTFULLY SUBMITTED** this 28th day of September, 2015.

**DEPUTY AUSTIN KEYS, BADGE #27,
in his individual capacity**


By: /s/ ***Michael S. Carr***
    Daniel J. Griffith, MSB #8366
    Michael S. Carr, MSB #102138
    Attorneys for Defendant

Of Counsel:

**GRIFFITH & CARR**
123 South Court Street
P. O. Drawer 1680
Cleveland, MS 38732
Telephone: 662-843-6100
Facsimile: 662-843-8153
Email: mcarr@griffithcarr.com

---

[5] See [Doc. 18] at page 13.

## **CERTIFICATE OF SERVICE**

I, Michael S. Carr, counsel for Defendant, Deputy Keys, in the above case, do hereby certify that I have this day caused a true and correct copy of the above and foregoing *Rebuttal to Plaintiffs' Response to Defendant's MSJ* to be delivered by ECF filing system to:

> Ronald W. Lewis
> RONALD W. LEWIS, ATTORNEY
> 404 Galleria Lane, Ste. 5
> Oxford, MS 38655
> Phone: (662) 234-0766
> Email: ron@ronlewislaw.com
> **Attorney for Plaintiff**

**FILED** this 28th day of September, 2015.

> */s/ Michael S. Carr*
> Michael S. Carr